UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION

**THERAN ALEXANDER,**
    **Plaintiff,**
v.
**BARRY RAY TAYLOR;**
**FREDERICK J. BRITTON, SR;**
**LINDA UDOVICIC;**
**SAINT ELIGIUS, LLC.;**
**and 1-6 JOHN DOES,**
    **Defendants.**
_____/

Case No.: 8:23-cv-252

## **COMPLAINT**

Comes now the Plaintiff, THERAN ALEXANDER, and sues the Defendants, BARRY RAY TAYLOR; J. BRITTON, SR; LINDA UDOVICIC, SAINT ELIGIUS, LLC.; and 1-6 JOHN DOES, and states as follows:

**JURISDICTION**

1. This is a civil action where the damages are in excess of $300,000,000, and the Plaintiff and Defendants, BARRY RAY TAYLOR; FREDERICK J. BRITTON, SR; and SAINT ELIGIUS, LLC, and the JOHN DOES 1-6 as to Count I are residents of different states. Therefore, this court has diversity jurisdiction per 28 USC §1332 under COUNT-I.

2. As to Count II, for violations of RICO, this court has federal question jurisdiction per 28 USC §1331.

**THE PARTIES**

3. At all times material herein, Plaintiff, THERAN ALEXANDER, is an elderly disabled/paralyzed Black man residing in Pinellas County, Florida.

4. BARRY RAY TAYLOR is a lawyer, who may reside In Virginia or Wyoming.

5. Defendant, FREDERICK J. BRITTON, SR., is a resident of Georgia.

6. Defendant, LINDA UDOVICIC, a Florida resident, who at all times material herein is an authorized agent of the Defendants and is sued only in Count II below.

7. SAINT ELIGIUS, LLC, is located and registered in Wyoming with its address of 30 N Gould St., Suite R, Sheridan, Wyoming, with a state registration number of 000809486.  TAYLOR is a Director and BRITTON is the registered agent and likely a Director.

8. Defendants, JOHN DOES 1-6, are other owners of SAINT ELIGIUS, LLC, not yet disclosed.

**UNDERLYING FACTS**

9. At all times material herein, Defendant, LINDA UDOVICIC, acting as the agent of the Defendants, introduced the Plaintiff to the Defendants due to the Plaintiff's desire to sell a government issued bond.

10. TAYLOR and BRITTON thereafter convinced Plaintiff to enter into a "Joint Venture Agreement" with Defendants.[1]

11. The Joint Venture Agreement is dated January 22, 2019, and stated in the signed document that SAINT ELIGIUS, LLC had a Buyer of the Plaintiff's historical bond and that the yet to be determined price is over One Billion USD for Plaintiff less 33% to be paid to the Redemption Center and SAINT ELIGIUS, LLC.

12. The January 22, 2019 Joint Venture Agreement was replaced by the Defendants on February 8, 2019, where the Plaintiff would net $300 million. The active agreement of February 8, 2019 called for payments to begin on June 18, 2019, for 12 consecutive months. The only condition required of the Plaintiff, which he completed, was to assign his Brazilian Government Bond over to the Defendants.

13. Plaintiff began to ask the Defendants when he would start to receive the first payment, since it was not received as scheduled, and was consistently told it is coming very soon. Plaintiff called the Defendants' agent, LINDA UDOVICIC, who responded to the Plaintiff as instructed by the other Defendants, on the following dates: 2/02/2021 (told him that BRITTON said

---

[1] The Agreement is marked as confidential, so it will not be attached as an exhibit and will be produced under seal to the court when necessary.

he would be paid by the middle of the month); 2/19/2021 (told he would be paid by the end of the month); 2/22/2021 (he would be paid by April 6, 2021); around 05/01/2021 (told Plaintiff would be paid in the middle of June 2021); on 07/04/2021 ( told Plaintiff would be paid that week); 07/04/2021 ( Plaintiff told he would be paid on Thursday); 07/17/2021 ( Plaintiff told they are working on it); on 7/28/2021 ( told they would pay out on 08/04/2021); around end of August 2021, (Plaintiff will be paid 09/14/2021 or 9/15/2021); 9/15/2021 (Plaintiff would be paid on 09/29/2021); told on 10-01-2021 (Plaintiff would be paid anytime now); in late October 2021 (Plaintiff would be paid sometime between the 9th and 12th of November 2021); on 11/25/2021 ( Plaintiff would be paid in 1 ½ weeks); 12/04/2021 (Plaintiff would be paid after next Friday); on 12/17/2021 (Plaintiff would be paid before Christmas); 12/27/2021 (Plaintiff would be paid by January 10, 2022); on 01/17/2022 (Plaintiff would be paid "any day"); on 01/25/2022 (Plaintiff would be paid next week); 02/23/2022 (Plaintiff would be paid by mid-March 2022); on March 25, 2022, Defendants trying to buy a 10 pack of bonds from Plaintiff, but Plaintiff tells them he needs to be paid in full from original agreement and in response Defendants said he would be paid between the 11th and 22nd of April 2022); 04/17/2022 (Plaintiff told he would be paid out by end of May 2022); on 07/26/2022 (Plaintiff would be paid 08/15/2022); on

8/19/2022 (paperwork is being done with Plaintiff's office counsel so that Plaintiff is to be paid in 3 weeks); on 8/30/2022 (Plaintiff to be paid by 10/04/2022); on 09/08/2022 (Plaintiff's office counsel is texted that on 09/09/2022 he would be contacted by the agent of Defendants to do the paperwork); on /12/2022 (Defendants' agent, LINDA UDOVICIC, sends the paperwork to Plaintiff's office counsel for Plaintiff to be paid on October 4, 2022); on 10/04/2022 (Defendants' agent calls and says payment schedule would by 1% of the $300 million to be paid first, 9% to be paid 7-10 days later, the balance of $270 million will be paid in 12 payments of $22.5 million each, plus the Defendants will pay him "2-5% extra since we have been making money on the your bond for all these years"); on 10/06/2022 Defendants' agent, LINDA UDOVICIC, had scheduled a meeting with Plaintiff's office counsel, but told the Plaintiff she could not go because she did not have a car); on 10/17/2022 (Plaintiff's office counsel informs the Plaintiff that he has not talked to LINDA UDOVICIC at all); on 11/04/2022(Plaintiff is told by the agent, LINDA UDOVICIC, that the Defendants are working on the three payments); 11/22/2022( Plaintiff is told by the agent, LINDA UDOVICIC, the 1% starts on 12/15/2022; the 9% is to be paid 7-10 days later, and the balance of $270 million will be paid in 12 payments of $22.5 million each, plus she reiterated that the Defendants will

pay him 2-5% extra since we have been making money on the your bond for all these years); on 12/07/2022 Defendants' agent calls and repeats to Plaintiff the payment plan and confirms that the first payment is be paid on 12/15/2022).

14. On 12/23/2022, after Plaintiff's trial counsel spoke to Barry Taylor and Linda Udovicic, and was informed by Barry Taylor that first payment would be made on 12/27/2022.

15. On 12/27/2022, late at night and unknown to Plaintiff's counsel and the Plaintiff, LINDA UDOVICIC surprised the Plaintiff by coming into his nursing home room with a notary and Plaintiff's Medical POA to have the Plaintiff secretly sign a document prepared by the Defendants. Plaintiff refused and said he had to first contact his lawyer. In response, LINDA UDOVICIC stated that if he did not sign it, the Bond would be returned and both he and the bond would be put on a "Black List" and the bond would not be able to be sold and he would never be able to sell any of the bonds he has.

16. Plaintiff had his trial counsel send a letter on 12/29/2022 to Defendants and their agent, LINDA UDOVICIC, via text to BARRY TAYLOR and LINDA UDOVICIC, attached as **Exhibit A**, demanding a copy of the secret document they wanted Plaintiff to sign and an accounting of all of the money they have received over the years from Plaintiff's Bond.

17. The defendants never responded to the demands in the attached letter, **Exhibit A**. This suit was then necessary.

18. Despite the above numerous affirmances of date of payments to Plaintiff, no payments were ever received by the Plaintiff.

19. Plaintiff's government bond in the Joint Venture Agreement is included in an insurance wrap with AIG for trading and monetization so that all parties to the Agreement would make money. Only Defendants made money.

20. Defendants received payments and converted those payments to their own use.

## COUNT I
## FRAUD

21. Plaintiff realleges paragraphs 1-20.

22. All of the above material representations made by the Defendants concerning the payments to be made to the Plaintiff, including that the Defendants had secured a Buyer of Plaintiff's bond and that payments were to begin per the written document beginning at Paragraph 9 above, were false when made in writing in the Joint Venture Agreement and all of the dates thereafter made by the Defendants were false when made and known by the Defendants to be false when made, with the intention to induce the Plaintiff to have the Plaintiff wait and not take legal action; which was accomplished for years from 2019 to 2022.

23. The statements of having a Buyer and the dates of payments were false when made by Defendants.

24. The Defendants knew the statements of having a buyer and of the payment dates in the written agreement were false to induce the Plaintiff to sign the Agreement and take no further action.

25. The Defendants continued to make false statements of revised payment dates and defendants knew they were false when made.

26. The Defendants had the intention that their false representations of dates of payments and actual payments to be made to have the Plaintiff rely on the false representations to induce the Plaintiff to enter into the Joint Venture Agreement and further delay the Plaintiff from canceling the contract so that the Defendants would continue to make money on the Plaintiff's Bond.

27. Defendants succeeded to have the Plaintiff believe the Defendants were acting with the fiduciary duty they had to protect the financial resources of the Plaintiff and to make money for the Plaintiff.

28. As a result of the continuous false statements of the Defendants on getting paid per the Joint Venture Agreement and the continuous fraud and false statements made by the Defendants in when the payments would be received by the Plaintiff, the Plaintiff has suffered great financial loss over $300 million and great pain and suffering.

WHEREFORE, the Plaintiff, THERAN ALEXANDER, demands judgment for compensatory and punitive damages against the Defendants, BARRY RAY TAYLOR; FREDERICK J. BRITTON, SR; SAINT ELIGIUS, LLC.; and 1-6 JOHN DOES, jointly and severally, together with interest, costs, and other relief deemed by the court and demands trial by jury.

## COUNT II
## RICO

29. Plaintiff realleges paragraphs 1-20.

30. This action is brought per the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USCS §§ 1961 et seq.)

31. Defendants' actions of stating the bond has been sold and that the Buyer is going to make payments per the Joint Venture Agreement, and thereafter continuing to misrepresent the dates of payments over and over again to the Plaintiff were made with the specific intent that the Plaintiff rely on the misrepresentations.

32. The actions of the defendants in conspiring to continuously lie to the Plaintiff to make money only for themselves were unlawful in violation of the provisions of §§ 1962(a)-(c) (18 USCS § 1962(d)) and 18 USCS §1964, resulting in damages to the Plaintiff.

WHEREFORE, the Plaintiff, THERAN ALEXANDER, requests judgment against all the Defendants for compensatory damages and treble damages, together with attorney fees and costs and other relief deemed as determined by the court and demands trial by jury.

<u>**/s/ Kennan G. Dandar**</u>
KENNAN G. DANDAR, ESQ.
Florida Bar No. 289698
TIMOTHY M. DANDAR, ESQ.
Florida Bar No. 86750
DANDAR & DANDAR, P.A.
Post Office Box 24597
Tampa, Florida 33623 -4597
PH:8 I 3-289-3858/Fax: 813-287-0895
(Email):
KGD@DandarLaw.net;
TMD@Dandarlaw.net;
Attorneys for Plaintiffs