UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION

**ESTATE OF THERAN ALEXANDER,**
    Plaintiff,
v.                                      **Case No.: 8:23-cv-252-SDM-CPT**
**BARRY RAY TAYLOR;**
**FREDERICK J. BRITTON, SR; and**
**SAINT ELIGIUS, LLC,**
    Defendants.
_____/

## FIRST AMENDED COMPLAINT

Comes now the Plaintiff, ESTATE OF THERAN ALEXANDER, and sues the Defendants, BARRY RAY TAYLOR; J. BRITTON, SR; and SAINT ELIGIUS, LLC., and states as follows:

### JURISDICTION

1. This is a civil action with jurisdiction under 28 USC §1332, where damages exceed $75,000 and there is diversity jurisdiction.

### THE PARTIES

2. At all times material herein, Plaintiff, THERAN ALEXANDER, was a disabled, paralyzed, and elderly Black man residing in a nursing home in Pinellas County, Florida, and died in the nursing home in Pinellas County, Florida on June 20,2023, after this suit was filed.  Probate in

the Pinellas County Circuit Court was instituted and Vassar Calvin Crews, a Pinellas County resident, was appointed the Personal Representative, Case No. 23-010461-ES.

3. At all times material herein, Defendant, BARRY RAY TAYLOR, resides in Virginia or Wyoming.

4. At all times material herein, Defendant, FREDERICK J. BRITTON, SR., is a resident of Georgia.

5. At all times material herein, Defendant, SAINT ELIGIUS, LLC, is located and registered in Wyoming with its address of 30 N Gould St., Suite R, Sheridan, Wyoming, with a state registration number of 000809486. TAYLOR and BRITTON are the sole owners and Directors, with BRITTON serving as the registered agent.

**UNDERLYING FACTS**

6. At all times material herein, Linda Udovicic, acting as the agent of the Defendants, introduced THERAN ALEXANDER to the Defendants due to THERAN ALEXANDER's desire to sell a government issued bond.

7. TAYLOR and BRITTON thereafter contacted THERAN ALEXANDER and convinced THERAN ALEXANDER to enter into a "Joint Venture Agreement" with Defendants.[1]

8. The Joint Venture Agreement is dated January 22, 2019, and stated in the signed document that SAINT ELIGIUS, LLC had a Buyer of the Plaintiff's historical bond and that the yet to be determined price is over One Billion USD for THERAN ALEXANDER less 33% to be paid to the Redemption Center and SAINT ELIGIUS, LLC.

9. The January 22, 2019, Joint Venture Agreement was replaced by the Defendants on February 8, 2019, where THERAN ALEXANDER would net $300 million. The active agreement of February 8, 2019, called for payments to begin on June 18, 2019, for 12 consecutive months. The only condition required of THERAN ALEXANDER, which he completed, was to assign his Brazilian Government Bond over to the Defendants.

10. THERAN ALEXANDER began to ask the Defendants when he would start to receive the first payment, since it was not received as

---

[1] The Agreement is marked as confidential, so it will not be attached as an exhibit and will be produced under seal to the court if and when necessary.

scheduled, and was consistently told it is coming very soon. THERAN ALEXANDER called the Defendants' agent, Linda Udovicic, who responded to THERAN ALEXANDER as instructed by the Defendants, on the following dates:

a. 2/02/2021: told THERAN ALEXANDER that BRITTON said THERAN ALEXANDER would be paid by the middle of the month;

b. 2/19/2021: told THERAN ALEXANDER that he would be paid by the end of the month;

c. 2/22/2021: told THERAN ALEXANDER that he would be paid by April 6, 2021;

d. 05/01/2021: told THERAN ALEXANDER that he would be paid in the middle of June 2021;

e. 07/04/2021: told THERAN ALEXANDER that he would be paid that week;

f. 07/04/2021: told THERAN ALEXANDER that he would be paid on Thursday;

g. 07/17/2021: told THERAN ALEXANDER that they are working on it;

h.  7/28/2021: told THERAN ALEXANDER that they would pay out on 08/04/2021;

i.  Around the end of August 2021: told THERAN ALEXANDER that he will be paid on 09/14/2021 or 9/15/2021;

j.  9/15/2021: told THERAN ALEXANDER he would be paid on 09/29/2021;

k.  10-01-2021: told THERAN ALEXANDER he would be paid anytime now;

l.  late October 2021: told THERAN ALEXANDER he would be paid sometime between the 9th and 12th of November 2021;

m.  11/25/2021: told THERAN ALEXANDER he would be paid in 1½ weeks;

n.  12/04/2021: told THERAN ALEXANDER he would be paid after next Friday;

o.  12/17/2021: told THERAN ALEXANDER he would be paid before Christmas;

p.  12/27/2021: : told THERAN ALEXANDER that he would be paid by January 10, 2022;

q. 01/17/2022: told THERAN ALEXANDER that he would be paid "any day;"

r. 01/25/2022: told THERAN ALEXANDER that he would be paid next week;

s. 02/23/2022: told THERAN ALEXANDER that he would be paid by mid-March 2022;

t. March 25, 2022: Defendants trying to buy a 10 pack of bonds from THERAN ALEXANDER, but THERAN ALEXANDER tells them he needs to be paid in full from first bond sale and in response Defendants said he would be paid between the 11th and 22nd of April 2022;

u. 04/17/2022: told THERAN ALEXANDER that he would be paid by end of May 2022;

v. 07/26/2022: told THERAN ALEXANDER that he would be paid 08/15/2022;

w. 8/19/2022: told THERAN ALEXANDER that paperwork is being done with THERAN ALEXANDER's office counsel so that THERAN ALEXANDER will be paid in 3 weeks;

x.  8/30/2022: told THERAN ALEXANDER that he would be paid by 10/04/2022;

y.  09/08/2022: THERAN ALEXANDER's office counsel is texted that on 09/09/2022 he would be contacted by the agent of Defendants to do the paperwork;

z.  09/12/2022: Defendants' agent, Linda Udovicic, sends the paperwork to THERAN ALEXANDER's office counsel for THERAN ALEXANDER to be paid on October 4, 2022;

aa. 10/04/2022: Defendants' agent, Linda Udovicic, calls and says payment schedule would be 1% of the $300 million to be paid first, 9% to be paid 7-10 days later, the balance of $270 million will be paid in 12 payments of $22.5 million each, plus the Defendants will pay THERAN ALEXANDER "**2-5% extra since we have been making money on your bond for all these years**;"

bb.   10/06/2022: Defendants' agent, Linda Udovicic, had scheduled a meeting with Plaintiff's office counsel, but told THERAN ALEXANDER she could not go because she did not have a car;

    cc. 10/17/2022: THERAN ALEXANDER's office counsel informs THERAN ALEXANDER that he has not talked to Linda Udovicic at all;

    dd. 11/04/2022: THERAN ALEXANDER is told by the Defendants' agent, Linda Udovicic, that the Defendants are working on the three payments;

    ee. 11/22/2022: THERAN ALEXANDER is told by the Defendants' agent, Linda Udovicic, the 1% starts on 12/15/2022; the 9% is to be paid 7-10 days later, and the balance of $270 million will be paid in 12 payments of $22.5 million each, plus she reiterated that the Defendants will pay him 2-5% extra **<u>since we have been making money on your bond for all these years</u>**;

    ff. 12/07/2022: Defendants' agent, Linda Udovicic, calls and repeats to THERAN ALEXANDER the payment plan and confirms that the first payment is be paid on 12/15/2022.

11. On 12/23/2022, after THERAN ALEXANDER's trial counsel spoke to Barry Taylor and Linda Udovicic, THERAN ALEXANDER was informed by Barry Taylor that first payment would be made on 12/27/2022.

12. On 12/27/2022, late at night and unknown to Plaintiff's counsel and THERAN ALEXANDER, Linda Udovicic, agent for the Defendants, surprised THERAN ALEXANDER by coming into his nursing home room with a notary and THERAN ALEXANDER's Medical POA to have THERAN ALEXANDER secretly sign a document prepared by the Defendants. THERAN ALEXANDER refused and said he had to first contact his lawyer. In response, Linda Udovicic, as agent for Defendants, stated that if he did not sign it, the Bond would be returned and both he and the bond would be put on a "Black List," the bond would not be able to be sold, and THERAN ALEXANDER would never be able to sell any of the other bonds he has.

13. THERAN ALEXANDER had his trial counsel send a letter on 12/29/2022 to Defendants and their agent, Linda Udovicic, via text, attached as **Exhibit A**, demanding a copy of the secret document they wanted THERAN ALEXANDER to sign and demanding an accounting of all of the money they have received over the years from THERAN ALEXANDER'S Bond.

14. The defendants never responded to the demands in the attached letter, **Exhibit A**. This suit was then necessary.

15. Despite the above numerous affirmances of date of payments to THERAN ALEXANDER by the Defendants, no payments were ever received by THERAN ALEXANDER.

16. THERAN ALEXANDER's government bond in the Joint Venture Agreement is included in an insurance wrap with AIG with tens of thousands of other bonds for trading and monetization so that all parties to the Agreement would make money. Only Defendants made money.

17. Defendants received payments and converted those payments to their own use.

## COUNT I
## FRAUD

18. Plaintiff realleges paragraphs 1-17.

19. All of the above material representations made by the Defendants concerning the payments to be made to THERAN ALEXANDER, including that the Defendants had secured a Buyer of THERAN ALEXANDER's bond and that payments were to begin per the written document beginning at Paragraph 9 above, were false when made in writing in the Joint Venture Agreement and all of the dates thereafter

made by the Defendants were false when made and known by the Defendants to be false when made, with the intention to induce THERAN ALEXANDER to have THERAN ALEXANDER wait and not take legal action; which was accomplished for years from 2019 to 2022. Those payments to Defendants are continuing.

20. The statements of having a Buyer and the dates of payments were false when made by Defendants.

21. The Defendants knew the statements of having a Buyer and of the payment dates in the written agreement were false to induce the THERAN ALEXANDER to sign the Agreement and take no further action.

22. The Defendants continued to make false statements of revised payment dates and Defendants knew they were false when made.

23. The Defendants had the intention that their false representations of dates of payments and actual payments to be made were to have THERAN ALEXANDER rely on the false representations to induce THERAN ALEXANDER to enter into the Joint Venture Agreement and further delay THERAN ALEXANDER from canceling the

contract so that the Defendants would continue to make money on THERAN ALEXANDER's Bond.

24. Defendants succeeded to have THERAN ALEXANDER believe the Defendants were acting with the fiduciary duty they had to protect the financial resources of THERAN ALEXANDER, and to make money for THERAN ALEXANDER.

25. As a result of the fraud committed by the Defendants as outlined above, THERAN ALEXANDER suffered great financial loss, anxiety, pain, and suffering.

WHEREFORE, the Plaintiff, ESTATE OF THERAN ALEXANDER, demands judgment for compensatory and punitive damages against the Defendants, BARRY RAY TAYLOR; FREDERICK J. BRITTON, SR; SAINT ELIGIUS, LLC., jointly and severally, together with interest, costs, and other relief deemed by the court to be proper and demands trial by jury.

### CERTIFICATE OF SERVICE

I hereby certify that this pleading was filed via the CM/ECF on the 21st day of March 2024 and served via email to counsel for Defendants.

*/s/ Kennan G. Dandar*
KENNAN G. DANDAR, ESQ.
Florida Bar No. 289698

DANDAR & DANDAR, P.A.
Post Office Box 24597
Tampa, Florida 33623 -4597
PH:8 I 3-289-3858/Fax: 813-287-0895
(Email):
KGD@DandarLaw.net;
**Attorney for Plaintiff**